UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SELF STORAGE ADVISORS, LLC, a Washington Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>SE BOISE BOAT & RV STORAGE, LLC, an Idaho Limited Liability Company,<br><br>Defendant. | Case No. 1:18-cv-00294-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are numerous motions in *limine* filed by the parties. Defendant submitted a notice segregating six of its thirteen motions for early resolution. Dkt. 67. Thus, the Court will rule on Defendant's motions in *limine* # 1, 2, 5, 6, 7, and 10 (Dkt. 59), and on Plaintiff's motions in *limine* # 1 (Dkt. 68), 2 (Dkt. 69), 3 (Dkt. 70), and 4 (Dkt. 71).[1] The motions are fully briefed and at issue.

---

[1] Defendant's motions in *limine* 3, 4, 8, 9, 11, 12 and 13 will be addressed in a separate order if this case does not settle.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Trial for this matter is set for April 5, 2021. Self Storage Advisors, LLC ("SSA") has sued SE Boise Boat & RV Storage ("BBRV") for breach of contract, based on a Property Management Agreement signed by the parties in which SSA agreed to manage the operation of BBRV's storage facility. *See Amend. Compl.*, Dkt. 5 at ¶ 11; *Answer*, Dkt. 18 at ¶ 11. SSA seeks damages in the form of lost management fees. Dkt. 5 at ¶ 43.

## LEGAL STANDARD

There is no express authority for motions in *limine* in the Federal Rules of Evidence. Nevertheless, these motions are well recognized in practice and by case law. *See, e.g.*, *Ohler v. United States*, 529 U.S. 753, 758 (2000). The key function of a motion in limine is to "exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A ruling on a motion in *limine* is essentially a preliminary ruling, which may be reconsidered in the context of trial. *Id.* at 41.

Motions in *limine* are beneficial tools that promote judicial efficiency by presenting the Court with an opportunity "to rule in advance of trial on the relevance of certain forecasted evidence . . . without lengthy argument at, or interruption of, the trial." *D.A.*, 2013 WL 12147769, at *2 (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). But these pretrial evidentiary rulings are

made before the court has seen or heard the challenged evidence, and they restrict a party's presentation of their case. *Id.* Thus, "courts have recognized that motions in limine should be granted sparingly and only in those instances when the evidence plainly is inadmissible on all potential grounds." *Id.* (internal quotation marks and citation omitted).

In resolving these motions, the Court is guided by Federal Rules of Evidence 401 and 403. The Court must evaluate whether the proposed evidence is relevant—that is—whether the evidence has "any tendency to make a fact more or less probable than it would be without the evidence" and whether "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if the evidence is relevant, the Court may exclude it if "its probative value is *substantially* outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ANALYSIS

### A.  BBRV's Motions in *Limine*

#### 1.  Motion in *Limine* No. 1 re: expert witness Keith Pinkerton

BBRV first seeks to exclude SSA's expert, Keith Pinkerton, from testifying at trial. BBRV argues that Pinkerton's opinions will not assist the jury in resolving a factual dispute, and that his opinion is based on pure speculation on matters

outside of his area of expertise.

An expert witness may testify in the form of an opinion if the Court finds that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

To admit expert testimony, the Court must "perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). The proponent of the testimony bears the burden of establishing admissibility. *See* Fed. R. Evid. 702 advisory committee notes (2000) ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").

SSA seeks to have Pinkerton testify as to the present value of the management fees that SSA would have received from BBR had BBR not allegedly breached the Property Management Agreement. His opinion is based on three

elements: "the amount of the fees that would have been payable to SSA, the time horizon over which the contract would have been in place, and a proper discount rate with which to bring the payments to a present-day value." Ex. A, Dkt. 59-1 at 31.

The Court finds that Pinkerton's proposed testimony of the methodology he used to calculate likely monthly fees and the present value of these payments is relevant and reliable, and thus admissible under Rule 702. Pinkerton's expert report explicitly identified his calculations and the rates he used for the present value. Dkt. 59-1 at 40-42. SSA has demonstrated that Pinkerton's testimony will be helpful to the jury in determining the present value of the monthly fees allegedly payable to SSA.

However, the Court finds problematic the portion of Pinkerton's report where he opines that "the most reasonable conclusion regarding the Property Management Agreement is that all parties considered this to be a long-term arrangement," and that 20 years is therefore the appropriate time horizon to use in his calculations. Pinkerton—as a financial analyst—is certainly qualified to render an opinion on fee calculations and the present value thereof, but he has no "scientific, technical, or other specialized knowledge" which would qualify him to render an opinion on the legal interpretation of the Agreement. Fed. R. Evid. 702.

Moreover, Pinkerton does not provide any explanation of how he arrived at a 20-year figure for calculating the total lost profit amount. If that number came from his interview with Jay Graham, then Graham will be able to testify to it as a lay witness.

In light of these considerations, the Court finds that any probative value of Pinkerton's testimony regarding the 20-year time horizon is substantially outweighed by the risk of unfair prejudice to BBRV. Accordingly, the Court will deny BBRV's first motion in *limine* in part to the extent that Pinkerton may testify as an expert as to the appropriate monthly fees payable to SSA under the contract and the present value of those fees. The Court will grant BBRV's motion in part to the extent that Pinkerton may not testify about his interpretation of the contract as a "long-term arrangement" and, if no other testimony is offered in support of such a time frame, he may not testify about the 20-year time horizon for lost compensation. On the other hand, if there is other evidence presented from which the jury could conclude that parties' agreement made the 20-year time horizon appropriate, Pinkerton will be permitted to include in his opinion lost compensation predicated on that time frame. In that case, the Court will provide the jury with a limiting instruction that they are to consider such testimony only if they find that the parties' agreement required such a time horizon.

### 2.  Motion in *Limine* No. 2 re: limiting damages to 23 months

BBRV next moves the Court to limit SSA's alleged damages to a maximum of 23 months. Dkt. 59-1 at 16. BBRV asserts that because Jay and Corinne Graham filed counterclaims in Idaho State Court in June 2020 seeking to judicially dissolve BBRV, SSA is now barred under quasi-estoppel from seeking damages past this period.

Quasi-estoppel applies "when it would be unconscionable to allow a party to assert a right which is inconsistent with a prior position." *Willig v. Dept. of Health & Welfare*, 127 Idaho 259, 261 (1995). Unlike equitable estoppel, quasi-estoppel does not require "concealment or misrepresentation of existing facts on the one side, [and] no ignorance or reliance on the other." *Id.* (citing *Evans v. Idaho State Tax Comm.*, 97 Idaho 148, 150 (1975). Rather, quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him." *KTVB, Inc. v. Boise City*, 94 Idaho 279, 281 (1971).

Here, the November 2016 Property Management Agreement provided that, "The initial term of this Agreement shall begin on the Effective Date and end if Jay and/or Corinne Graham divest their shares in the partnership [BBRV]." Ex. B, Dkt. 59-1 at 53. BBRV argues that the Grahams' request in Idaho State Court for the court to judicially dissolve BBRV triggers the termination provision in the Agreement. BBRV further asserts that quasi-estoppel prevents the Grahams—and

by extension, SSA—from now attempting to prove damages past May 2020.

The Court agrees. The Grahams have sought judicial dissolution of BBRV, which will dissociate them as members. *See* Idaho Code § 30-25-602(16) ("A person is dissociated as a member when: . . . (16) The limited liability company dissolves and completes winding up."). SSA cannot now argue, to BBRV's detriment, that the Property Management Agreement would have continued into perpetuity and they are entitled to those management fees. Accordingly, the Court grants BBRV's second motion in *limine* and orders that SSA's alleged damages are limited to 23 months.

> 3. **Motion in *Limine* No. 5 re: construction costs; Motion in *Limine* No. 6 re: capital calls; Motion in *Limine* No. 7 re: construction expertise**

BBRV's fifth, sixth, and seventh motions in *limine* ask the Court to preclude on relevance grounds any evidence or testimony regarding construction costs, BBRV capital calls, and the parties' construction practices knowledge. Dkt. 59-1 at 17-18. Both parties acknowledge that the issues are not directly relevant to the claims at issue in the litigation, but SSA requests that the Court allow it to present evidence on the topics as background information. *Id.*; Dkt. 60 at 12-14. BBRV appears to agree that the evidence should be allowed in as background information. Accordingly, the Court will deny BBRV's motions in *limine* 5, 6, and 7.

### 4. Motion in *Limine* No. 10 re: Graham construction opinions

BBRV's final motion in *limine* asks the Court to preclude Jay Graham from testifying as to his opinion on the costs or means and methods of construction because he is not an expert in that field. Dkt. 59-1 at 19. SSA agrees that Graham will not testify to anything that would be considered expert testimony related to construction of the BBRV facility and that he will only testify as to background information. As there does not appear to be any dispute over this motion, the Court will grant it.

### B.     SSA's Motions in *Limine*

### 1. Motion in *Limine* No. 1 re: expert witness testimony

SSA's first motion in *limine* asks the Court to prohibit BBRV from eliciting testimony from its proposed expert, William Partin, who was disclosed in response to SSA's disclosure of Keith Pinkerton. Dkt. 68-1 at 1-2. BBRV counters that it did not provide an expert report because it does not intend to call Partin. Rule 26(a)(2) mandates that when a party plans on using an expert witness, the party disclose a written report containing, *inter alia*, the "opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2). When a party fails to disclose information in compliance with Rule 26(a)(2), Rule 37(c)(1) of the Federal Rules of Civil Procedure automatically precludes that party from using such expert evidence at trial unless there was a substantial justification for the noncompliance

or unless the noncompliance was harmless. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011). Accordingly, the Court will grant SSA's motion and order that BBRV may not offer any expert testimony from Partin at trial.

### 2.  Motion in *Limine* No. 2 re: pleaded defenses

SSA next moves the Court to exclude any evidence at trial of new defenses not previously raised by BBRV. Dkt. 69-1. The only specific evidence SSA points to is from a letter sent by BBRV's counsel alluding to "a way for business partners [to] free themselves from business relationships that have turned acrimonious." Dkt. 74 at 3. SSA is correct that, to the extent that oblique reference is intended as a defense, BBRV is precluded from such a defense at trial, as the deadline for amending pleadings and discovery has long passed. The Court will grant SSA's motion to the extent that SSA seeks to preclude evidence of this specific defense.

However, the Court will deny the motion to the extent that SSA seeks a general order that BBRV may not present any new defenses or theories at trial. *See D.A. v. Meridian Joint Sch. Dist. No. 2*, 2013 WL 12147769, at *2 (D. Idaho June 14, 2013) ("Where a party fails to pinpoint the challenged evidence, or the grounds on which is should be excluded, the motion in limine will be denied.").

### 3. Motion in *Limine* No. 3 re: revised property management agreement

SSA's third motion in *limine* seeks to exclude evidence relating to the Revised Property Management Agreement that this Court dismissed on summary judgment, finding that it lacked consideration. Dkt. 70. SSA is correct that issues relating to the revised agreement are no longer relevant to the remaining issues for trial, which relate solely to the first agreement.

The Court is not persuaded by BBRV's assertion that the existence of and circumstances surrounding the revised agreement are relevant to its affirmative defenses numbered 3, 4, 5, 7, and 11. Dkt. 72 at 12. Defenses 4 and 5 both refer to SSA's second cause of action, which was dismissed by the Court on summary judgment. *Answer*, Dkt. 18 at 9. Defense 11, which asserts that SSA's claims are "barred by failure of capacity for claims based on illegal forgery," also plainly refers to SSA's second cause of action, as the validity of the first agreement is not disputed by either party. *Id.* Defense number 3 alleges that "Plaintiff's claims are barred because of unclean hands. *Id.* But under Idaho law, the "unclean hands doctrine stands for the proposition that a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue." *Countrywide Home Loans, Inc. v. Sheets*, 160 Idaho 268, 273 (2016) (internal quotation marks, alterations,

and citation omitted). Because the second cause of action relating to the revised agreement is no longer a controversy in issue, the revised agreement is not relevant to proving this defense. Finally, BBRV's seventh defense generally alleges that "Plaintiff's claims are barred by breach of contract," but BBRV fails to explain how any evidence relating to the revised agreement tends to prove that SSA's claims relating to the first agreement are barred by breach of contract.

The Court finds that any minimal relevance that the circumstances surrounding the creation and existence of the second revised property agreement has is substantially outweighed by the dangers of unfair prejudice, misleading the jury as to the relevant issues, and creating delay. Accordingly, the Court will grant SSA's motion to exclude evidence regarding the revised property management agreement. The Court is also mindful, however, that evidence which seemed irrelevant or precluded by Rule 403 in advance of trial may become very relevant after the trial begins and the dynamic of the trial unfolds differently than the Court could anticipate. For that reason, the evidence will be precluded, but without prejudice to a motion to reconsider by BBRV should circumstances at trial justify such a motion.

### 4. Motion in *Limine* No. 4 re: breaches of operating agreement by Jay Graham

SSA's final motion in *limine* seeks to exclude evidence as to any alleged

breaches by Jay Graham of the BBRV operating agreement.

BBRV has failed to adequately articulate why evidence of Graham's alleged breaches of the BBRV operating agreement are relevant to this case. BBRV alludes to the provision of the management agreement that terminates the agreement if the Grahams' dissociate as members of BBRV—possibly suggesting that it intends to use evidence relating to the operating agreement to prove damages—but the Court has already agreed to limit SSA's potential damages to 23 months. It is not apparent how evidence of Jay Graham's breaches would tend to make any fact relating this *this* lawsuit more or less probable. The Court previously noted in an order resolving Defendant's Motion to Stay that, "this case and the state court action are not parallel—they involve different parties, concern different material facts, and require the interpretation of different—and disputed—contractual agreements." Dkt. 28 at 4.

Any potential relevance is substantially outweighed by the danger of unfair prejudice to SSA, which is solely owned by Jay Graham. Accordingly, the Court will grant SSA's motion to exclude evidence regarding alleged breaches of the BBRV operating agreement by Jay Graham. Again, it is possible that the evidence at trial may unfold in such a way that the Court will be required to reconsider this ruling. However, BBRV will carry a heavy burden of showing that the evidence

has been made relevant by the evidence presented and that the prejudice to SSA has been substantially mitigated.

## ORDER

**IT IS ORDERED that:**

1. BBRV's Motion in *Limine* No. 1 Re: Exclusion of Plaintiff's Expert, Ketih Pinkerton, From Testifying at Trial (Dkt. 59) is **GRANTED** in part and **DENIED** in part.

2. BBRV's Motion in *Limine* No. 2 Re: Limiting SSA's Alleged Damages to a Maximum of 23 Months (Dkt. 59) is **GRANTED**.

3. BBRV's Motion in *Limine* No. 5 Re: Evidence of Construction Costs (Dkt. 59) is **DENIED**.

4. BBRV's Motion in *Limine* No. 6 Re: Evidence of Capital Calls (Dkt. 59) is **DENIED**.

5. BBRV's Motion in *Limine* No. 7 Re: Construction Practices or Expertise (Dkt. 59) is **DENIED**.

6. BBRV's Motion in *Limine* No. 10 Re: Graham Construction Opinions (Dkt. 59) is **GRANTED**.

7. BBRV's Motions in *Limine* No. 3, 4, 8, 9, 11, 12 and 13 (Dkt. 59) will be ruled on by separate order. The parties are directed to file a notice if this case does not settle and a ruling on these motions is required.

8. SSA's First Motion in *Limine* No. 1 Re: Expert Witness Testimony (Dkt. 68) is **GRANTED**.

9. SSA's Motion in *Limine* No. 2 Re: Pleaded Defenses (Dkt. 69) is **GRANTED** in part and **DENIED** in part.

10. SSA's Motion in *Limine* No. 3 To Exclude Evidence Regarding Revised Property Management Agreement (Dkt. 70) is **GRANTED**.

11. SSA's Motion in *Limine* No. 4 To Exclude Evidence Regarding Alleged Breaches of Operating Agreement by Jay Graham (Dkt. 71) is **GRANTED**.

DATED: February 3, 2021

_____
B. Lynn Winmill
U.S. District Court Judge